**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**GEBRIHIWET ARAYA MOGOS,**

    *Petitioner*,

v.                                                                       **Case No. 5:26-CV-0740-JKP**

**ROSE THOMPSON, et al.,**

    *Respondents.*

**ORDER GRANTING**
**PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1) filed pursuant to 28

U.S.C. § 2241. Respondents (often referred to as "the Government") have filed a response (ECF

No. 5). The Court finds no reason to wait for a reply. The petition is ready for ruling. After review-

ing the briefing, provided evidence, and applicable law, the Court grants the petition for the reasons

below.

**I. BACKGROUND**

Petitioner, a native and citizen of Eritrea, arrived in the United States in 2017 seeking pro-

tection from persecution and harm in Eritrea. More particularly, on October 15, 2017, Petitioner

applied for admission to the United States at the Hidalgo, Texas Port of Entry and requested asy-

lum. He lacked identification and travel documents at that time. Immigration authorities (often

referred to by commonly used acronyms ERO (Field Office of Enforcement and Removal Opera-

tions), ICE (Immigration and Customs Enforcement), or DHS (Department of Homeland Security)

issued him a Notice to Appear ("NTA") charging him as inadmissible under § 212(a)(7)(A)(i)(I)

of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I). This

provision makes "any immigrant" inadmissible who "at the time of application for admission"

lacks proper travel documentation as set out in the statute.

Just shy of six months later, on April 5, 2018, at the merits hearing for Petitioner's asylum claim, an immigration judge ("IJ") found him removable but granted him Withholding of Removal pursuant to the Convention Against Torture ("CAT"). Accordingly, the IJ recognized that Petitioner faces clear probability of torture if returned to his home country. As a result, while he may not be removed to his home country, 8 U.S.C. § 1231(b)(3), he can be removed to a third country. *Johnson v. Guzman Chavez*, 594 U.S. 523, 531–32 (2021).

The order of the IJ became final on April 5, 2018, and Petitioner was released from physical custody that same day on an Order of Supervision, which required periodic check-ins with immigration authorities. Nothing suggests that he has failed to comply with that order. Indeed, Petitioner asserts that he attended all check-ins and followed all conditions of his release. For the next seven-plus years Petitioner lived continuously in Austin, Texas, where he became part of the community and came to understand that his removal was not foreseeable. Nevertheless, when Petitioner reported in person to the San Antonio Residence Office on July 17, 2025, he was taken into physical custody by immigration authorities. He was provided no change in circumstances or any change that had affected their ability to remove him or to lead to his imminent removal. He has been in custody since that date without bond even though he had complied with all requirements of his prior release and has no criminal history of arrests or convictions. The next day, he was served with a Notice of Revocation of Release.

After receiving Petitioner's immigration file on August 8, 2025, ERO determined that Petitioner lacked a passport or other valid travel document. Nearly three weeks later, on August 27, 2025, ERO interviewed Petitioner regarding travel documentation, and he refused to cooperate with efforts to remove him to Eritrea.

Five months later, on January 29, 2026, the same day coincidentally that Petitioner filed the instant habeas petition, ERO contacted a Detention and Deportation Officer ("DDO") for assistance in third country removal. Petitioner asserts that his detention violates 8 U.S.C. § 1231(a)(6) of the INA as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). He further asserts a claim under the Fifth Amendment. On February 3, 2026, ERO received a third-country removal referral for processing.

Although Petitioner filed the instant petition on January 29, 2026, it was not docketed until February 6, 2026, and did not come onto the Court's radar until February 9, 2026, the same day the Court faced numerous habeas responses invoking a recently decided opinion from the Fifth Circuit, *Buenrostro-Mendez v. Bondi*, ___ F.4th ___, 2026 WL 323330 (5th Cir. Feb. 6, 2026). Thus, when the Court was able to first review the instant petition on February 10, 2026, it was nearly two weeks old. These facts, all outside the Petitioner's control, warranted the Court expediting the response in this case without recourse to any extension of time. And the Court most definitely recognizes Respondents' effort to timely file their response on the expedited basis with the burgeoning habeas responsibilities for all involved.

On February 12, 2026, a day before their response was due, immigration authorities took three specific actions: (1) they served Petitioner with Form I-229(a), a Warning for Failure to Depart; (2) they submitted a Form I-241 to Libya and Ghana for acceptance; and (3) DDO confirmed that they would be working on removal of Petitioner. Thus, as of February 12, 2026, ERO is working to secure removal of Petitioner to a third country. Upon receiving a relevant update, ERO will submit necessary documentation to secure acceptance of the petitioner and a travel document for the identified third country of removal. Then, once a country accepts the petitioner, ERO will commence travel arrangements with an appropriate carrier depending on the country of removal.

One component of United States immigration authorities ("HQ-RIO Africa") has indicated that they are actively working with the Department of State and Department of Homeland Security on avenues to remove aliens to a third country.

Respondents timely filed their response today. They first point out an apparent inconsistency within the petition before the Court—Petitioner alleges that he "received a final deportation order on April 5, 2018, and remained detained since then" while also stating that he "was detained on July 17, 2025, seven years and three months after his removal became final." The Court recognized this apparent discrepancy prior to serving the petition on an expedited basis. At that time, and as ultimately confirmed by the Government's response, the Court viewed the detention commencing in 2018 as a combination of physical detention along with "detention" in the sense of remaining in immigration custody through the Order of Supervision. While the latter is perhaps better described as being under supervision than being detained, the Court attributes no significance to the explained apparent inconsistency. Respondents are undeniably correct that they have not physically detained Petitioner for over seven years. That indeed would be egregious facts.

Proceeding beyond that initial clarification by Respondents, they argue that Petitioner's final order of removal mandates his detention. They contend that Petitioner has not carried his burden to state a belief that his removal is unlikely in the foreseeable future, and that even if Petitioner has carried his burden, they have carried their burden to show that removal to a third country is in fact likely in the reasonably foreseeable future.

## II. LEGAL STANDARD

Habeas petitioners must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025) (quoting 28 U.S.C. § 2241(c)(3)). They "bear[] the burden of proving that [they are] being held

contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." *Id*. (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). Courts "considering a habeas petition must 'determine the facts and dispose of the matter as law and justice require.'" *Id.* at 697 (quoting 28 U.S.C. § 2243).

### III. ANALYSIS

Petitioner primarily argues that he is entitled to relief because his detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678 (2001) in that his removal is not reasonably foreseeable. Respondents argue that Petitioner's detention is lawful under 8 U.S.C. § 1231(a)(6) and that Petitioner does not satisfy the requirements for release under *Zadvydas*.

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682; *accord* 8 U.S.C. § 1231(a)(1). Subject to exceptions within § 1231, subsection (a)(1) mandates that the Government remove the noncitizen during this initial 90-day removal period.

The removal period commences on the latest of three dates, two of which are limited to specific circumstances. *See* 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 241.4(g)(1)(i). For example, the date of a reviewing court's final order may provide the latest date when "the removal order is judicially reviewed and if a court orders a stay of the removal." *See* 8 U.S.C. § 1231(a)(1)(B)(ii). Or the date the noncitizen "is released from detention or confinement" may provide the latest date when the noncitizen "is detained or confined (except under an immigration process)." *Id*. § 1231(a)(1)(B)(iii). If neither of those circumstances provide the latest date, then the period

commences on the "date the order of removal becomes administratively final." *Id*. § 1231(a)(1)(B)(i).

The statute, however, also provides for an extension of the initial 90-day period in some circumstances. *Id*. § 1231(a)(1)(C). More specifically:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

*Id*.; *accord* 8 C.F.R. § 241.4(g)(1)(ii). Furthermore, certain noncitizens "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6). Subsection (a)(6) applies to noncitizens who are (i) inadmissible under 8 U.S.C. § 1182, (ii) "removable as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy"; or (iii) have been determined "to be a risk to the community or unlikely to comply with the order of removal." *Zadvydas*, 533 U.S. at 682 (cleaned up).

While § 1231(a) provides authority in some situations to detain a noncitizen beyond the 90-day removal period for as long as is "reasonably necessary to secure removal," the Supreme Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. Furthermore, the Supreme Court recognized that six months is a "presumptively reasonable period of detention." *Id*. at 701. This six-month period includes the 90-day removal period. *See id*.; *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *5–6 (D. Md. Sept. 8, 2025) ("Where the *Zadvydas* Court referenced the 90-day statutory removal period in its discussion of the six-month period, it is clear that the six months includes the original 90-day period of detention, plus an additional 90 days."). "But the Supreme Court has held that a noncitizen may not, consistent with the Due Process Clause, be detained

indefinitely." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 695 (S.D. Tex. Sept. 26, 2025) (citing *Zadvydas*, 533 U.S. at 697).

In this case, Petitioner's order of removal became administratively final in April 2018. There is no indication that the removal period was extended under § 1231(a)(1)(C). There is no question that Petitioner has been detained longer than the presumptively reasonable six-month period recognized in *Zadvydas*. To make out a *Zadvydas* claim after the six months have run, a detained noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Once the noncitizen has carried that initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Id*.

"Good reason" is not an onerous standard. Indeed, at least one court has characterized it as a "modest standard." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019) *abrogated on other grounds by Alvarez Ortiz v. Freden*, No. 25-CV-960-LJV, 2025 WL 3085032 (W.D.N.Y. Nov. 4, 2025) (abrogating court's prior position on declining to enjoin transfer of a petitioner while the court considered its authority to issue relief). *Zadvydas* itself recognized that a detainee need not rule out "*any* prospect of removal—no matter how unlikely or unforeseeable." 533 U.S. at 702. And continuing good faith efforts to effectuate removal is only part of the equation, because the calculus requires courts to give due weight to the likelihood of those efforts to succeed in the future. *Id*. Further, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. at 701.

Through the circumstances of his detention and the undisputed facts, Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future. The burden thus shifts to the Government to show that removal is likely in the foreseeable future. Through a submitted declaration, the Government submits that ICE is actively working with its agency counterparts to secure removal to a third country. But, under the facts of this case, that declaration does not carry the Government's burden.

When the immigration court ordered Petitioner removed from the United States, it also granted him a withholding of removal under 8 U.S.C.§ 1231(b)(3)(A), thereby providing him protection under CAT and precluding removal to his country of origin. The grant of such a withholding of removal "substantially increases the difficulty of removing him." *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025).

Further, Petitioner's release in April 2018 was subject to an order of supervision. Implicit in such a decision is a finding that Petitioner "was nonviolent and would remain so if released, that he was not likely to pose a threat to the community if released, that he was not likely to violate the conditions of his release, and that he did not pose a flight risk." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 693 (S.D. Tex. 2025) (citing 8 C.F.R. §§ 241.4(d)(1) and (e)). Release under an Order of Supervision of a noncitizen who has been ordered removed invokes "detailed regulations concerning when and how that Order of Supervision may be revoked." *Id*. at 694 (citing 8 C.F.R. § 241.4(l)). While an "Order of Supervision may be revoked if the noncitizen violates any of its conditions," or "when it is appropriate to enforce a removal order or when "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate," the Government must notify the noncitizen "of the reasons for revocation of his or her release" and afford the noncitizen "a prompt initial informal interview to allow the noncitizen an opportunity to respond to and contest the reasons for revocation." *Id*. (citing regulations).

Petitioner remained released on that Order of Supervision through July 17, 2025, when he

reported to the San Antonio ICE Office as his supervision order required. At that point, ICE detained him and revoked the supervision order the next day without a stated reason. Petitioner had been released for more than seven years without any indication that he would be removed in the reasonably foreseeable future. During his time on release, he dutifully appeared for his scheduled check-ins and complied with the terms of his release.

Unless the Government returns "to the immigration court to seek an order lifting the order for a withhold of removal," it cannot remove Petitioner to Eritrea. *See Villanueva*, 801 F. Supp. 3d at 703 (citing 8 C.F.R. § 1208.24(f)). The Government has not initiated such proceedings, and its submitted declaration does not state that any such proceedings are anticipated. Further, the declaration demonstrates that following Petitioner's April 2018 order of removal, the Government took no efforts to remove him until after taking him into custody on July 17, 2025. Although it revoked his supervision order the day after arresting and detaining him, it took more than two weeks to obtain Petitioner's immigration file, another nearly three weeks to interview Petitioner regarding travel documents, and it then allowed five months to pass without further action until it sought assistance in third country removal. Further, while the Government has taken some action just before filing its response in this case, that action does not indicate that removal of Petitioner is likely in the reasonably foreseeable future. The Government contends that until ERO receives refusals to accept Petitioner there is no reason to believe that the contacted countries are unlikely to accept him for removal. The Government's declaration in this case contains insufficient information to find "that circumstances have changed to the point that [Petitioner's] removal is now reasonably foreseeable when it was not before." *Id*.

Additionally, "any efforts to remove [Petitioner] to a third country would likely be delayed by proceedings contesting his removal to the third country . . . identified." *Id*. When a petitioner

9

"likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings," the circumstances "further demonstrate[] that removal is not likely in the reasonably foreseeable future." *Zavvar*, 2025 WL 2592543, at *8. Even when ICE has "identified a third country," noncitizens like Petitioner "would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings." *Munoz-Saucedo*, 789 F. Supp. 3d at 399 (cleaned up).

These factors all impact the propriety of continued detention. Notably, ICE did not commence Petitioner's current detention because it had located a country willing to accept him. ICE detained him without any explanation, without a removal plan, and without revoking his order of supervision until the next day. While Respondents may believe that removal is within the reasonably foreseeable future, that belief remains unrealized and entirely speculative at this point. When ICE commenced Petitioner's detention in July 2025, it had made no determination that Petitioner could be removed in the foreseeable future. After detaining Petitioner, months passed with little or no action to attempt to remove him. The Government is now taking some steps towards removing Petitioner to a third country. But it cannot cure the wrongful commencement of detention through its belated efforts right before responding to a petition for writ of habeas corpus. This is especially true when there has been no stated progress on such removal during the Petitioner's continued detention, which now approaches its seventh month. That there is no indication from either contacted country that such country will refuse the request for third-country removal is not sufficient.

When there has been a long period of time between an issued supervision order (in this case more than seven years) and being taken into custody; no removal plan in place at the commencement of detention; an initial lack of explanation for detention; an unrealized, after-the-fact contention that the Government intends to expeditiously remove the petitioner; and no immigration

proceedings concerning removal to a third country, the circumstances demonstrate that there is no substantial likelihood that Petitioner's removal is reasonably foreseeable. *See Puertas-Mendoza v. Bondi*, Case No. 5:25-CV-0890-XR, 2025 WL 3142089, at *2–4 (W.D. Tex. Oct. 22, 2025) (granting habeas petition on same grounds under substantially similar factual circumstances); *Villanueva*, 801 F. Supp. 3d at 705 (granting habeas petition based on *Zadvydas* when detainee had withholding of removal, the Government had neither initiated proceedings to lift the order to withhold removal nor removed him for eight years following his order of removal, and there was no evidence that circumstances had changed to make removal reasonably foreseeable).

Additionally, although the Government mentions that the removal period is properly extended when the noncitizen presents a flight risk or other risk to the community, it makes no argument that Petitioner is a flight risk or a danger to the community. Assuming without deciding that these considerations are relevant when removal is not reasonably foreseeable, the Court finds that a conclusory, passing remark that extension of detention may be warranted if the noncitizen presents a flight risk or other risk to the community is insufficient to justify further detention. Specific regulations require individualized consideration of concrete factors, and the Government has not shown that any factor supports finding Petitioner to be a flight risk or a danger to the community.

Finally, the Government argues that the appropriate remedy for procedural due process violation is substitute process rather than immediate release from custody. But Petitioner challenges his continued detention, not simply any delayed review. Substitute process cannot make an unlawful detention lawful when the detention violates § 1231(a)(6) and *Zadvydas*. In the circumstances here, the proper remedy is immediate release.

Under the circumstances of this case, the Court concludes that habeas relief is proper and *Zadvydas* requires Petitioner's release from his unlawful detention. The Court finds no need to

11

address any other claim or challenge not addressed herein. And, while Petitioner requests attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), the Fifth Circuit has held that recovery of attorney fees are not available in habeas corpus proceedings. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023). The Court thus denies the request for fees.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus (ECF No. 1). It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Gebrihiwet Araya Mogos from custody, under appropriate conditions of release, to a public place **no later than February 15, 2025.**

2. Respondents must **NOTIFY** Petitioner's counsel of the exact location and exact time of his release as soon as practicable and no less than two hours before his release.

3. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED**.

4. The parties shall **FILE** a Joint Status report no than **February 16, 2026**, confirming that Petitioner has been released.

A final judgment will be issued separately.

**IT IS SO ORDERED this 13th day of February 2026.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**

12